Thank you, Your Honors. Good morning. My name is Francisco Ugarte, and I represent the petitioner Dan Truk Huynh, who is observing these proceedings over video. I respectfully reserve three minutes for rebuttal. This court has instructed the parties to address two issues for oral argument, assuming it has jurisdiction under Bonilla v. Lynch, and I will confine my argument to those two issues. First, the agency erred by concluding that Mr. Huynh was ineligible to adjust his status because the evidence establishes that Mr. Huynh was never trafficked nor aided in the trafficking of drugs. Mr. Huynh is a refugee, and he sought a motion to reopen to seek adjustment of status. I thought the criminal record showed that he was subject to felony probation under Cal Health and Safety Code 11352A, which makes it a violation to transport, import, or give away controlled substances, which sounds like a drug trafficking offense to me. Yes, Your Honor, you're right. That is a drug trafficking offense, but a close review of that rap sheet shows that, and I believe it's on record, page 102, that that was an erroneous statement on the police report. The rap sheet indicates that he was on felony probation for 1150, which is a possession offense, and in fact, the rap sheet reflects no drug trafficking convictions at all. So, you're saying that the criminal history doesn't show a felony probation for 11352, because I thought I have it on AR 105, I think it is? Yes. Or that's the, then there's the, he says in the, his brief that he was arrested for trafficking crimes in 2008, 2011, and 2014. Yes. Is that correct? Yes, yes, he was arrested for trafficking related offenses, but he never pled to a trafficking. So, does he have to plead? Because I thought it was reason to believe a sort of a probable cause standard, so there, it doesn't have to be a conviction. Is there something that says it must be a conviction in order to have reason to believe? That's absolutely right, Your Honor, that you don't need to be convicted to have a reason to believe finding, but there's no evidence here of any kind of probable cause determination based merely on the rap sheet that there's been traffic, probable cause of trafficking. And then, if you look at the plain face of the police report, of course, I objected on authentication grounds, but if you simply look at the police report, you have an officer observing Mr. Nguyen, you have an officer observing a transaction, there seems to be... But the BIA says that it wasn't the police, he says he upholds the IJ, or the BIA upholds the IJ on the grounds that it which the BIA then recites, and that was sufficient. Is that wrong? Yes, you're absolutely right, Judge, and the BIA was erroneous. There is a false assumption that Mr. Nguyen was on probation for a drug trafficking offense when he was actually... Are we now talking about the All right, well, the sui sponte decision, we can only review for legal error. Now, I know the government may argue that this recent case with this court does make our jurisdiction in question, but let's leave that aside for now. Assuming that we are looking at whether there was legal or constitutional error, I mean, this is not... It's a factual error that you're pointing to, right? You're pointing to a set of factual errors that the BIA may have gotten wrong while determining that he wasn't eligible for... So that they weren't going to exercise their sui sponte discretion. No, Your Honor, I would disagree. There are two legal errors. The first legal error is that the court, the BIA erroneously found that there was sufficient evidence to establish... That's not a legal error. That's evidence. That's correct, but by applying the legal standard, they failed to apply the Lumisor legal standard when determining whether there was reason to believe because they didn't properly evaluate the evidence. This isn't... That's evidence. I mean, that's the problem. You have a very narrow, or not very narrow, but a relatively narrow window here to get us, for us to be able to review the suponte denial, and factual error isn't one of them, and so far you're pointing to factual errors. Well, I believe this is legal error because the BIA made a finding that there was reason to believe that he was involved in drug trafficking. Right, they made a finding, exactly. And rendering him legally ineligible for belief. Based on a legal finding that you're saying was erroneous. And yes, a factual finding. So even if the factual finding was erroneous, the question I guess that Judge Berzon is saying is, was the legal conclusion that the BIA, so in other words, if the facts were correct, was the BIA's legal conclusion wrong? Let's assume the facts are correct because we can't look behind and look at the facts. Thank you, Honor. And just to be clear, assuming the facts are not in dispute. So I'm assuming that there is no factual dispute based on the underlying record. We're assuming the validity of the statements of the officer. We're assuming that the legal conclusion that Mr. Nguyen was inadmissible because there was reason to believe is error. And that's why I believe this is legal error. But in addition to that... I'm sorry, I didn't follow that. Let's assume everything, every finding the IJ made was correct. The BIA doesn't make factual findings, says the IJ. And the BIA looked at the IJ's factual findings and said there's three pieces of evidence showing that he's involved in drug trafficking. That's enough for reason to believe. So the issue for you would be that wasn't enough for assuming that those facts are correct. That wasn't enough for reason to believe. Are you making that argument? Yes. And I'm saying that the law, they applied the law wrongly in making that finding. And if you look... How is that if there's three pieces of evidence that the BIA identifies? So what was wrong with that? Well, let's just say even if the IJ and BIA held that Mr. Nguyen was on felony probation for 11-352, hypothetically speaking, which he was not. 11-352 is an overbroad offense. It is not a trafficking offense, categorically. You can transport. The schedule of drugs is overbroad. The mere report of him being on felony probation is not sufficient to make a finding that he's been involved in trafficking. And I think if you look at the cases that have dealt with trafficking issues, Lumensor, others, when trafficking has been found, there's typically a large amount of drugs, a large amount of money. And when this court has reversed those findings, it's where there has been... The evidence reflects unclear statements around what was happening. They took a sworn declaration or the petitioner's testimony. They compared it with the detective's testimony. And in Lumensor, there was an adverse hearing and reversed the credibility finding in that case. So the fundamental... And if I could segue now into the hearing issue. The hearing, Your Honor, individuals have a right to present evidence and to confront witnesses. Is that true with regard to a sua sponte reopening? I would say... I mean, a sua sponte reopening is sua sponte. I mean, the whole notion of a motion for a sua sponte reopening is itself a little peculiar, but we recognized it. But it's not the same as a 1229 proceeding, is it? I absolutely agree, Your Honor. And I think it's rare that for a case like this to get to a hearing. It would be rare for a case like this to get to a hearing. And I don't think that's a statutory provision would require hearing in all cases. But has there ever been a hearing on a sua sponte? I mean, the question in a sua sponte reopening is whether to reopen. If it's reopened, then you get the hearing, right? That's true. And honestly, in my many years of experience, I've never heard of a hearing, however, in a sua sponte. So you're absolutely right. But in this case, the government, in response to the motion for sua sponte reopening, their primary reason for responding, for objecting, was to hold, was to argue that Mr. Nguyen was ineligible for relief. That was their argument. And so they essentially went to the merits, they didn't have to go there, they could have just argued discretion in extraordinary circumstances. Excuse me, Your Honor. The government insisted that he was ineligible for relief. And that triggers the legal error triggers this court's jurisdiction. And I think you're all if this were simply an extraordinary circumstances case, I don't necessarily think this would be a much more difficult case. But I think this is a very clear case, because the government and the judge denied sua sponte because he was legally ineligible. And that was an improper finding. Even if you assume that a sua sponte artist should have been issued to reopen the case, would it have been futile to reopen it and send it for a hearing on the issues raised here? Oh, no, not not at all, Judge. Mr. Nguyen has a strong chance of adjusting. I think he has demonstrated in his life his rehabilitation. He can very clearly demonstrate he's never sold drugs or trafficked drugs. He's a refugee entered in 1993. His father was a political prisoner. He he meets those standards. And I regularly practice and handling these kind of 209 C waivers. So of course, I can't guarantee that their outcome would have been different. But I think it would have significantly altered the outcome of the case. Based on your argument that there was some mistake of fact concerning the nature of his prior conviction. Your Honor, I'm not arguing at this point, a mistake of fact, because I do agree that if it was a mistake of fact, this court wouldn't have jurisdiction. I'm arguing legal error in the application of the reason to believe standard. And so I know that you haven't really been arguing the authentication question. Your Honor, this is a legal proceeding. And for hundreds of years, courts have applied basic standards of authentication. Evidence was introduced in this case. And in this case, a police report was introduced. There was no form of authentication. I thought the government in his last 28 day letter said that there was in fact a penalty of perjury declaration. If that's correct, I'd be embarrassed. But there was a penalty of perjury declaration stating that they obtained a police report from the San Francisco Police Department. There is no evidence of a transmission of the report. We don't even know if this police report was withdrawn or not. And so obviously, it appears a police report. I'm not contesting that. But there has to be some form of authentication, Your Honor. Deportation is at stake. And the government can't simply throw in a piece of evidence that negates his entire eligibility to remain. What is the standard in an immigration proceeding since the federal rules of evidence don't apply? Well, that's a good question. I know in Vadian, we said it was a very low standard. That's correct. And there are some authentication requirements for criminal conviction documents in the regulations. But interestingly, Is there anything for a police report? There's no specific regulation for a police report, but common law rules of authentication apply. So the IJ said the numbers connect up. The IJ compared the police report to the criminal, you know, it looks like a police report and then compared it to the so there was so he the IJ corroborated it. Does that mean the low standard? Or why doesn't that make the low standard? Well, that's a post hoc justification for the government's failure to authenticate. And we haven't established what the standard is for authentication, since we know the federal rules of evidence don't apply. That was my question. But what my response was, Judge Ikuda, is that the federal rules of evidence do apply for the BIA has held that any form of common law authentication can suffice for immigration court. But there are two problems. One of this, this seems like a quintessentially factual issue. I is this a good enough fact or not a good enough fact. And number two, even if it isn't the notion that the we're back to the 1229 problem that this is not that kind of proceeding. So how do we know that the standards of authenticity even assuming they were violated apply to this? Well, Your Honor, the government put themselves in this position by presenting this evidence in response to the motion to reopen. And once they introduce evidence that the court considers, then there have to be requirements around authentication. And, and rely on this. I guess the question is, why do they have to? Because the policy the BIA said, when we're determining whether we're going to sue us spontaneously open, we're not going to make people jump through hoops. It looks like a police report. It's a police report that proper. If that were the law, Your Honor, then yes, but that's not the law. The law is clear that evidence must be authenticated in immigration court. And there's no exception. So a spontaneous contact? No. Do you have a case for that? Well, I had the regulations in 1003.23. And it doesn't appear to have any, you know, qualification that evidence need not be authenticated. And, and, of course, you know, feasibly, this court could make that rule, but there is no rule and we are set with BIA precedent, all evidence must be authenticated. This is a court proceeding, Your Honors. And, and it is critically important that some minimal standards of process are adhered to. And when the government introduces such a contested piece of evidence, you know, and of course, that would go factual issue. But this is this is goes to the heart of what legal proceedings should be. And authentication is foundational, as we understand when we learn to go to law school and when we go into court, and no, no authentication happened here. Okay, your time is up. If we counsel found that there was some form of attempt to authenticate that police report through the review of your client's criminal history, and the report for that. Does that negate your argument in position here? No, because even even the lack of authentication, our argument is that there should have been a hearing to be able to address, we have a right to confront government evidence, we have a right to put on witnesses and see because the government invoked this issue of reason to believe we had a hearing around it. Thank you, Your Honor. Thank you very much. We'll give you a minute to rebuttal. Miss Schneider. Your Honor. Apologies, let me just start my timer. So I have time here. Good morning and may it please the court. Alana J. Snyder on behalf of the United States Attorney General. Respectfully, Your Honor, we ask that the court dismiss the petition for review for lack of jurisdiction. Your Honor, there are two tracks running simultaneously in this case. The first is the petitioner's motion to rescind and reopen his in absentia order of removal. And the second is the agency's refusal to to exercise its due esponse authority and reopen proceedings. We respectfully assert the court does not have jurisdiction over either one of these tracks. Now regarding the first track, the government will rest on the brief so as to address the court's April 24, 2020 order unless the court has any questions. Now regarding the second track, the agency's refusal... Miss Schneider, with regard to the first question, it's not a jurisdictional problem, is it? Well, we respectfully assert that because there's no legal question to be resolved in the case regarding the notice and exceptional circumstances, that essentially folds up into the criminal alien bar question that's presented with regards to the in absentia removal order. And in any event, even if the court determines that the criminal alien bar is inapplicable in this case, that there was that the court should deny the petition for review. So turning to the second issue, which the court has ordered the government to discuss here today, the court has no jurisdiction over the agency's refusal to exercise its due esponse authority here because the agency did so based on a lack of exceptional circumstances. And this case does not fit into the narrow Bonilla exception as modified last week by Lona versus Barr. You think the opinion last week modified Bonilla? Yeah, the agency... So the court's decision in Lona last week basically said that the scope of Bonilla is limited to either when the agency denies due esponse reopening because it erroneously believes that the law forbade it from exercising its discretion, or the agency denies due esponse because it erroneously believes that exercising its discretion would be futile. Right. The second part, as you read through the opinion, seems to encompass as logically it does. Any legal decision that says he's going to lose and therefore, we're not going to do so due esponse. Therefore, if you make a mistake in determining whether he's going to lose, a legal mistake, not a factual mistake, or a constitutional mistake, you still have jurisdiction. A three-judge panel wouldn't have had authority to change what Bonilla said, and I don't see that it did. I think with the court in Bonilla, or excuse me, what Lona versus Barr was saying was that the scope of Bonilla is only going to apply to orders where the board is clear on its face, where it's obvious from the board's order that what it's doing is refusing to exercise its jurisdiction saying, okay, we don't have the authority to do so, or where it's saying it would be futile to do so. And I don't think from the face of this decision that that's what the board or the immigration judge was doing. And this is supported by the plain language of the agency's orders, the continuous citations to matter of GB and matter of JJ, which are the agency's hallmark cases on the exercise of exceptional circumstances, and the substantial similarity between the Lona decision's language and the language at issue here. And so this is, and regarding the board's note that the immigration judge found there's reason to believe drug trafficking, this is the board's response, essentially, to the petitioner's arguments on appeal. And it's essentially the board looking at the immigration judge's decision through the lens of the petitioner's arguments to the board. And in any event, even if the court does find that this was some sort of utility exercise, as Judge Lomel discussed with petitioner's counsel, we will assume that Bonilla applies for the purposes of addressing the court's April 24 2020 order. And to address the first question, whether the agency erred in concluding that there was sufficient evidence to establish an eligibility for adjustment of status, we respectfully assert that the court would not have jurisdiction, as was discussed previously, over the reason to believe drug trafficking, because at a minimum, this is a mixed question of fact and law where the facts are disputed. And in fact, petitioner's that he disputes whether or not petitioner was subject to probation for an 11352a violation on August 2, 2011, when he was subsequently arrested. And this is something that the board essentially says happened. So the facts are disputed, there are critical facts that are disputed in this case. And of course, that does not fit into the court's Ramadan and the Supreme Court's exception under Guerrero-Las Breas to questions of law. Now, regarding, I don't know if the court would like us to assume that there is jurisdiction or assume that this doesn't raise a factual question. It seems to me that it's what the office order says you should assume that you have jurisdiction to the degree it's a legal question. But to the degree, it's not a legal question. That's really the question is, is it not a legal question? And secondly, do the authentication rules apply to the hearing rules apply, etc. The rules of authentication do apply in removal proceedings, but and this sort of goes to that also answers the court's second question regarding holding a hearing. Petitioner in this case is not in removal proceedings. Petitioner had removal proceedings from 2011 to 2014. Those proceedings concluded with an in absentia final order of removal. And so to sort of two prong the answer. First, the while the authentication requirements do apply, they're very flexible, as I believe Judge Aikudo was talking about earlier, they're, they're very flexible standard and immigration proceedings, and they require any form of authentication and immigration proceedings. And this court, to my, to my understanding, has never applied that authentication requirement in the sui sante context. And then also regarding the entitlement to a hearing. So of course, the petitioner is not in removal proceedings. And so section 1229, AB 4B does not apply in this case. Is your limitation only apply to sui sante requests or would it apply to any motion to reopen even a timely one? Are you saying that if you have a timely motion to reopen, the authentication rules and the hearing rules and so on don't apply? Yes. And actually, I think the that the plain language of the statute regarding statutory motions to reopen support the government's position here because the statute regarding statutory motions to reopen 1229, AB 7, actually state that a petitioner is applying for this motion to reopen to obtain the opportunity to get a new hearing, not that he or she had the right to hearing to get a new hearing. And essentially what petitioners argument boils down to, if you will, is the right to a second hearing. That's essentially what this is. Petitioner has the right to a hearing in 2014. And now he's asserting that he has the right essentially to a second hearing. But I think the point of the statutory motions to reopen highlights that even in the statutory motions to reopen context, the petitioner does not have the right to a hearing. And so it would follow that naturally in the, you know, in these types of cases, which are essentially the ultimate act of administrative grace, the petitioner would not also have the right to some sort of hearing under 1229A. Would the petitioner in the sua sponte context and seeking a sua sponte reopening have a right to assert that there was a legal or constitutional error committed by not considering whether or not a removable person's addiction, homelessness combined together created an issue concerning their competency to even go to a hearing, even at the time of notice to the council. I'm having trouble understanding, I guess, to me is an underlying issue here as to our jurisdiction to consider whether or not illegal or constitutional error was made concerning due process rights along the lines of this petitioner's alleged competency. Do you understand what I'm saying? Yes, your honor petitioner was able and provide and provided with a sufficient opportunity to raise all of these arguments below on the papers as it's traditionally done in the motions to reopen context and is stipulated in the regulations regarding sua sponte reopening. So just to quickly move backwards and give you a quick timeline. So the petitioner was able to reach a state that those papers would sufficiently demonstrate his competency despite his contentions otherwise? I'm not sure that competency is something that's raised in this case. I'm sorry, I didn't hear that last point, your honor. Raised in those terms, but it seems implicit. Essentially, that means, my understanding is that part of the extraordinary, there are two aspects to the extraordinary circumstance they were asserting. One is that he, even though his attorney was given notice originally, he was not in a position to be in touch with his attorney, he couldn't be found, he was in terrible circumstances. And later to that is that he has since rehabilitated himself and he's now functioning well and he should be allowed to stay. But that's my understanding of the extraordinary circumstances. So my understanding of what Judge Lamela is saying is that the first part of that is tantamount or related to a competency. Right, and I think this does ultimately get to the question of the idea that the exceptional what this court said essentially in Achimian is that the exceptional circumstances determination in this case is basically like a black box. It's something that's wholly committed to the agency's discretion and unreviewable and there are no standards, essentially meaningful standards for which this court can judge that determination. And as I said before, the government's position is that there was a finding here explicit that there was not an exceptional situation in this case and that the no adjustment of status determination or to the extent that there was a determination is just part and parcel of the agency's expression of its discretionary authority in this case. And I turn your honor's attention to pages four and five of page four. Explicitly, the agency explicitly says we agree with the IJ, the petitioner has not established the proceeding should be reopened to a font a quoting matter of excuse me, citing matter of GD and matter of JJ. And then on its own authority, the board says, moreover, we're not persuaded that this board and this board is not persuaded that an exceptional situation exists, which would warrant to a font a reopening. And that's verbatim, I can superimpose that language from the court's determination last week in Lona versus bar to this, to this language here. And so we respectfully submit to your honors that this is not, this is not a legal determination of an eligibility. You know, it's not unreasonable. And it's not irrelevant that the petitioner was or was not eligible for adjustment status in the exceptional circumstances determination. And so this is just an expression of the agency's discretion when it's discussing the eligibility for relief from removal. So we would respectfully assert obviously pursuant to that understanding of the agency's decision that the court does not have jurisdiction under Bonilla. And again, because that's something that's wholly committed to the agency's discretion, we have to assume this petitioner presented this type of evidence about his homelessness and about his drug abuse and about his mental health issues that the agency did consider this evidence in its determination of exceptional situation. So you're basically saying that the next two paragraphs, the last two paragraphs of the BIA decision are fluff. I mean, they're just not necessary to its conclusion. I the next two paragraphs are a response by the Board of Immigration Appeals to the petitioner's claims on appeal. And this is from the plain language that there's a pivotal moment in the board's decision, which is on the last page of the administration of the board decision, where they say we turn next to the responding claim, etc. So this is them viewing the immigration judge's decision essentially through the lens of the petitioner's argument on appeal. But your position is we could stop at the moreover sentence, and the rest of it doesn't matter. Well, I think I think actually the last sentence of the order gives us a clue that the board was really here looking at the sectional situation overall, where it says the board says we reject these due process claims. And in particular, again, by no error in consideration of the totality of this criminal record in denying through a spontaneous reopening, right? If they were really talking about reason to believe drug trafficking, they would have said by no error with the IJ determination that petitioner would be otherwise ineligible to the justice status, or something like that. So we don't think on the face of this order, and that's essentially what the court was saying in Lona, that it's not obvious from the face of this order. Or it's not plain here that the board was making some sort of legal determination of ineligibility. What it is is an expression of exceptional circumstances. Okay, except for and again, the fact that I don't understand why you're pulling alone into that argument. But your time is up. So thank you very much. Okay. Thank you very much, Your Honor. And Mr. Garchin. Thank you for your time, but I'll give you a minute. Thank you. Three brief points. Lona V. Barr, I don't think alters a B'nai as exception around undisputed facts, legal error, and constitutional error. As to the government's last point, the immigration judge denied this case because there was reason to believe that Mr. Nguyen was a drug trafficker and the BIA supported that conclusion. So we have an issue, certainly ready for review. The only point, Your Honor, I'd like to make, and I raised it in my that I addressed in the brief in the opening in their response. They did not go to the substantive due process. They didn't go to the authentication. They didn't go to the reason to believe. And I think it's pretty clear in this court and precedent when a party doesn't respond to those arguments that they waive them. And so I would just like to conclude that Mr. Nguyen has a six-year post. Sorry, Your Honor. I thought they responded to the response to the due process arguments. He's not entitled to due process. That could or could not be right, but they did respond. That's right, but they didn't respond to the specific arguments that I had raised. But the point, Your Honor, I'd just like to conclude Mr. Nguyen has a refugee here who struggled mightily but has gotten on track. Thank you for a hearing. Thank you so much. I want to thank both of you. Nguyen versus Farr is submitted. We will take a short break. Thank you. Let's say eight minutes. I think my colleagues are in court. Let's say eight minutes. Okay. Thank you very much.
judges: Berzon, Ikuta, Lemelle